(November 29, 1913.)

JAMES H. ROWE, JAMES K. HESLET, THOMAS TOMICH, CHARLES COPENHARVE and J. C. PHILLIPS, Plaintiffs, v. J. M. STEVENS, Judge of the District Court of Lemhi County, Idaho, and the DISTRICT COURT OF LEMHI COUNTY, Idaho, Defendants.

[137 Pac. 159.]

WRIT OF REVIEW—FOREIGN CORPORATION—POWER TO DO BUSINESS IN STATE—POWER OF DIRECTORS WHO LIVE IN ANOTHER STATE WHERE THE CORPORATION IS ORGANIZED TO SUE AND DEFEND SUITS IN THE STATE WHERE THE FOREIGN CORPORATION IS PROHIBITED UNDER THE LAWS OF THE STATE—APPEARANCE OF CORPORATION NOT QUALIFIED UNDER THE LAWS OF THE STATE.

(Syllabus to Opinion of Justice STEWART.)

1. The constitution, art. 5, sec. 2, provides: "The judicial power of the state shall be vested in a court for the trial of impeachments, a supreme court, district courts, probate courts, courts of justices of the peace, and such other courts inferior to the supreme court as may be established by law for any incorporated city or town."

2. Sec. 3830, Rev. Codes, prescribes the powers of the district courts: "The district court has original jurisdiction: 1. In all cases both at law and in equity; 2. In all special proceedings; 3. In the issuance of writs of *mandamus, certiorari,* prohibition, *habeas corpus* and all writs necessary to the exercise of its powers. . . . . ."

3. Sec. 2787, Rev. Codes, has not been repealed or changed by the act of January 30, 1912. This section provides: "Unless other persons are appointed by the court, the directors or managers of the affairs of such corporation at the time of its dissolution are trustees of the creditors and stockholders, or members, of the corporation dissolved, and have full power to settle the affairs of the corporation." This section does not apply in this case, but only applies as to the right to do business in the state.

4. *Held,* that there are no provisions in the statutes which limit the jurisdiction of the court in appointing trustees and receivers of a foreign corporation, which owns valuable property in the state and is making contracts and carrying on business, where such corporation becomes insolvent and has creditors and is unable to pay the debts of the corporation; and such corporation can be sued in the courts of the state, and the courts acquire jurisdiction of such

corporation by reason of the fact that such corporation has appointed an agent and a principal place of business in the state, and the district court and the judge thereof has power to make such appointment. (Sec. 4329, Rev. Codes.)

5. Except so far as the control of the affairs of a domestic or foreign corporation is placed in the hands of the receiver, its officers and directors, except when enjoined by the court appointing the receiver, continue to exercise their functions as if no receiver had been appointed.

6. *Held,* in this case, that the application and showing filed show no beneficial interest of the petitioners which would justify this court in issuing a writ of review to annul the order made by Judge Stevens at chambers, appointing a trustee or receiver for the ranch company.

7. *Held,* that the present action, if brought by parties interested, might have been sufficient, because of the necessities and interests of the different parties, and that it would be more speedy and remedial than an appeal.

(Syllabus to Opinion of Chief Justice AILSHIE.)

1. Where a foreign corporation has complied with the laws of this state and engaged in business and acquired property in the state, and thereafter failed to pay the corporation license tax and forfeited the right to continue to do business in the state, and thereafter a mortgagee commenced an action against the corporation to foreclose the mortgage without knowing that such corporation had forfeited its right to do business in the state, and the directors of the corporation resident of the state where the corporation was organized, not knowing of the state law requiring the corporation tax, employed an attorney and directed him to defend in the action, and an answer was filed and the trial of the case was actually entered upon, and thereafter the attorney for the corporation withdrew on the ground that under the statute the corporation was not entitled to defend in the action, *held,* that it was not in excess of the jurisdiction of the trial court to thereafter appoint a trustee of the corporation to defend the action, and that the power to do so is conferred upon the court both by the provisions of sec. 11, chap. 6 of the Laws of the Extraordinary Session of 1912 and by the provisions of subdivisions 5 and 6 of sec. 4329 of the Rev. Codes.

2. A foreign corporation duly organized and existing under the laws of a foreign state, which has complied with the foreign corporation laws of this state so as to entitle it to do business, and thereafter forfeited such right by reason of its failure to pay the corporation tax, is no longer entitled to prosecute or defend actions in the state, but it is not in all respects in the same condition as a domestic corporation which has been dissolved or has expired by reason of the expiration of its charter.

Argument for Plaintiffs.

3. Where the directors of a foreign corporation have entered an appearance on behalf of the corporation and filed an answer and entered upon the trial of the case and thereupon discovered that the corporation had forfeited its right to do business in the state, and is no longer entitled to defend in an action, it is the duty of such directors to intervene in such action and defend the same if they do not want a trustee appointed by the court for the purpose of defending such action.

4. In a suit in equity and *in rem* to foreclose a mortgage, an abatement of the action does not necessarily work a dismissal of the action or destroy the cause of action, but merely operates to suspend the further prosecution thereof until the cause which resulted in the abatement is removed, when a revival may be had and the action may be prosecuted to final judgment.

5. Where a foreign corporation is shown to have complied with the laws of this state and to have lawfully entered upon business in this state, one dealing with such corporation or desiring to prosecute an action against it may presume that it has paid the corporation tax and is still entitled to do business in this state, and he is not chargeable with the duty of making inquiry and examination to ascertain if it has kept in good standing so long as it has continued to do business.

An original petition and affidavit for writ of review. Writ quashed and action dismissed.

J. B. Roote and A. C. Cherry, for Plaintiffs.

The order of the lower court was based upon the supposed authority contained in sec. 11, chap. 6, of the Laws of Extraordinary Session of 1912. This act confers no authority upon the court to appoint a receiver or trustee. We must look elsewhere for that authority. (Sec. 2787, Rev. Codes; *Havemeyer v. Superior Court,* 84 Cal. 327–356, 18 Am. St. 192, 24 Pac. 121, 10 L. R. A. 627; *Merges v. Altenbrand,* 45 Mont. 355, 123 Pac. 21; *Ferrell v. Evans,* 25 Mont. 444, 65 Pac. 714.)

There was no action pending in which an order could be made. After Nov. 30, 1912, no suit could be brought against Shenon Ranch Co. (*Crossman v. Vivienda Water Co.,* 150 Cal. 580, 89 Pac. 335; 5 Thompson on Corp., secs. 6721, 6723; Clark & Marshall on Corp., secs. 322–329; 10 Cyc. 1316;

*Pendleton v. Russell,* 144 U. S. 640, 12 Sup. Ct. 743, 36 L. ed. 574.)

Directors of corporations, at time of dissolution, or the termination of corporate existence, become *ipso facto* trustees of corporate property for the benefit of creditors and stockholders. (Sec. 2787, Rev. Codes; *Havemeyer v. Superior Court, supra; Crossman v. Vivienda Water Co., supra; In re Balfour and Garrett,* 14 Cal. App. 261, 111 Pac. 615.)

There is no appeal from the order complained of. Sec. 4807, Rev. Codes, specifies the cases in which appeals lie, and appeals cannot be taken in any cases except those mentioned. Nor is there any plain, speedy or other adequate remedy at law. (*Sweeny v. Mayhew,* 6 Ida. 455, 56 Pac. 85; *Cummings v. Steele,* 6 Ida. 666, 59 Pac. 15.)

The plaintiffs are the persons "beneficially interested" and are entitled to this court's writ of review to annul the order made by Judge Stevens at chambers appointing a trustee or receiver for the Shenon Ranch Co. (*Adams v. Wood,* 8 Cal. 306; *Washington County Abstract Co. v. Stewart* (opinion on rehearing), 9 Ida. 379, 74 Pac. 955; *Manhard Hdw. Co. v. Rothschild,* 121 Mich. 657, 80 N. W. 707; *Daniels v. Grayson College,* 20 Tex. Civ. App. 564, 50 S. W. 205; *Peavy v. Goss,* 90 Tex. 93, 73 S. W. 317; *State v. Eves,* 6 Ida. 148, 53 Pac. 543; *Estate of Boland,* 55 Cal. 312; *Goldtree v. Thompson,* 83 Cal. 422, 23 Pac. 383.) Except as otherwise provided by statute, the effect of the dissolution of a corporation is to terminate its existence as a legal entity, and render it incapable of suing or being sued as a corporate body or in its corporate name. It is dead, and can no more be proceeded against as an existing corporation than could a natural person after his death. There is no one who can appear or act for it, and all actions pending against it are abated, and any judgment attempted to be given against it is void. (5 Thompson on Corp., 2d ed., secs. 6550, 6553, 6564; *Mumma v. Potomac etc. Co.,* 8 Pet. 281, 8 L. ed. 945; *First Nat. Bank v. Colby,* 21 Wall. 609, 22 L. ed. 687; *Combes v. Keyes,* 89 Wis. 267, 46 Am. St. 839, 62 N. W. 89, 27 L. R. A. 369; *Oakland R. Co. v. Oakland etc. Co.,* 45 Cal. 365, 13 Am. Rep. 181; *Nelson v. Hubbard,*

96 Ala. 238, 11 So. 428, 17 L. R. A. 375–377; *Marion Phosphate Co. v. Perry,* 74 Fed. 425, 33 L. R. A. 252, 20 C. C. A. 490, 41 U. S. App. 14.)

E. W. Whitcomb, for Defendants.

The court had authority to appoint trustee. (*Milwaukee Mutual Fire Ins. Co. v. Sentinel Co.,* 81 Wis. 207, 210, 51 N. W. 440, 15 L. R. A. 627; *Idaho Fruit Co. v. Great Western etc. Co.,* 17 Ida. 273, 105 Pac. 562.)

Action in the name of the corporation is equivalent to an action in the name of its directors as trustee. (*Kansas City Hotel Co. v. Sauer,* 65 Mo. 279; *Hermann v. Butler,* 59 Ill. 225.)

The plaintiffs herein, having sanctioned the very proceedings of which they make complaint, cannot have the same avoided through a writ of review. (*State ex rel. Zuberbier etc. v. Judge First City Court,* 33 La. Ann. 15; *McKinney v. Penobscot County Commrs.,* 40 Me. 136.)

Petitioners had other plain, speedy and adequate remedies, including the right to appeal. (Sec. 4802, Rev. Codes; *People v. Lindsay,* 1 Ida. 394; *Dahlstrom v. Portland Mining Co.,* 9 Ida. 376, 74 Pac. 955.)

Plaintiffs are not beneficially interested in the suit below. (*Gold Hunter Mining etc. Co. v. Holleman,* 3 Ida. 99, 27 Pac. 413; *Washington County Abstract Co. v. Stewart,* 9 Ida. 376, 74 Pac. 955; *Dahlstrom v. Portland Mining Co.,* 12 Ida. 87, 85 Pac. 916; *Johnson v. Johnson,* 81 Me. 202, 16 Atl. 661.)

Substantial injustice must be shown to have been done to the petitioners. (*Rutland v. Worcester County Commrs.,* 20 Pick. (Mass.) 71, 83; *Freetown v. Bristol County Commrs.,* 9 Pick. (Mass.) 46, 50; *Gager v. Chippewa Supervisors,* 47 Mich. 167, 10 N. W. 186; *Lees v. Childs,* 17 Mass. 351.)

The subject matter pending in the court below must relate to the petitioners personally and separately. (*Creswell v. Commrs. Court of Greene County,* 24 Ala. 282, 284.)

Any alleged beneficial interest of petitioners in the suit below arises in tort, and does not survive the forfeiture of the defendants' right to do business. (*Milwaukee Mutual*

*Fire Ins. Co. v. Sentinel Co.,* 81 Wis. 207, 51 N. W. 440, 15 L. R. A. 627; *Noonan v. Orton,* 34 Wis. 259, 17 Am. Rep. 441.)

Plaintiffs herein have no equitable rights in the suit below. (Secs. 3389, 6007, Rev. Codes.)

STEWART, J.—This is a petition based upon an affidavit for a writ of review. The petition and affidavit allege that the Shenon Ranch Company was at all times mentioned a corporation under and by virtue of the laws of the state of Montana, with its principal place of business in the city of Butte, Silver Bow county, Montana; that on October 8, 1910, the Shenon Ranch Company (hereafter designated in this opinion as the ranch company) filed with the recorder of Lemhi county, said Lemhi county being the county within the state of Idaho in which the ranch company designated its principal place of business, a copy of its articles of incorporation duly certified by the Secretary of State of Montana; that on October 17, 1910, the ranch company filed with the Secretary of State of the state of Idaho a copy of the articles of incorporation duly certified by the county recorder of Lemhi county, and paid to the Secretary of State at the time the same fees as are provided by law; that on November 10, 1910, and within three months, it commenced to do business in the state of Idaho. The ranch company designated W. H. Mulkey, a resident of Lemhi county, in which the principal place of business of the ranch company was located, in which its principal business was conducted, as its agent, upon whom process issued by authority of or under any law of the state might be served, and within the time aforesaid, or on or about the 10th of November, the ranch company filed in the office of the Secretary of State of Idaho and in the office of the clerk of the district court of Lemhi county such designation in writing; that said ranch company did not pay the license tax for the year 1912 required by chap. 6 of the General Laws of the state of Idaho passed by the extraordinary session of the state legislature in 1912 and approved on January 30, 1912, and has not paid the said license tax required by said law for the year 1913 and has not paid the penalty prescribed by chap. 6 of

the general laws on account of its failure to pay the license tax for the years aforesaid; that on October 1, 1912, the Secretary of State of Idaho made a report to the governor giving a list of the corporations which had become delinquent in the payment of the license tax provided in sec. 3 of the act above described, and thereupon the governor issued his proclamation declaring that the right to do business in the state would be forfeited unless payment of the license tax together with penalty by law for such delinquencies be made to the Secretary of State on or before the hour of 4 o'clock of the 30th day of November then next following, to wit, November 30, 1912; that the Secretary of State in his report to the governor described the ranch company as being a foreign corporation that had failed to pay the license required by the law for the year 1912; that the ranch company has not at any time paid the license for 1912 required by the act above mentioned, and that the governor's proclamation was duly published, and that at the hour of 4 o'clock of the 30th day of November the right of the ranch company to do business in the state of Idaho became forfeited to the state, and that the ranch company has no legal right to do business in the state since November 30, 1912, and has no power to sue or be sued in the state of Idaho; that the plaintiffs herein, James H. Rowe, James K. Heslet, Thomas Tomich, Charles Copenharve and J. C. Phillips, were the sole and only directors and managers in office of the affairs of the ranch company at the hour of 4 o'clock P. M., November 30, 1912, and ever since have been and now are the sole directors of the said ranch company in the state of Montana, and that said directors by operation of law became *ipso facto* trustees of the ranch company for the benefit of its creditors and stockholders at the hour of 4 o'clock on November 30, 1912, and ever since have been and now are by reason of the provisions of chap. 6 above mentioned; that on March 17, 1913, the Shenon Land Company (hereafter designated as the land company), a corporation then and now existing under and by virtue of the laws of the state of Idaho, attempted and pretended to bring an action in the district court of Lemhi county against the ranch company

by filing in the district court of Lemhi county a complaint which is made a part of the petition, and on March 17, 1913, a summons was issued in the action and the summons was directed to said ranch company, and in the month of March the summons was served by the sheriff of Lemhi county upon W. H. Mulkey as the agent of the ranch company; that within twenty days from such service upon Mulkey the plaintiffs, as directors of the ranch company in the state of Montana, caused an appearance of the ranch company to be entered in the action and a demurrer to the complaint to be filed in the district court, and on April 23, 1913, the plaintiffs as such directors caused an answer and cross-complaint to be filed in the said pretended action, a true copy of which is attached and made a part of the affidavit and petition for review; and on April 24th the land company filed in the action an answer to the cross-complaint of the ranch company; that on April 23d the action commenced by the land company against the ranch company came on for trial before Hon. J. M. Stevens and a jury. The trial continued from day to day over Sunday until April 28, 1913. On said day upon opening court James H. Rowe filed in the court and presented to the judge a suggestion in writing of the termination of the existence in the state of Idaho of the right to do business in the state of Idaho of the ranch company, and a copy of said written suggestion is attached and made a part of the petition. The court discharged the jury and the trial terminated without any judgment of any kind being given or entered therein. Then on the following day, April 29, 1913, the plaintiffs commenced an action in the district court of Lemhi county against the land company by filing their complaint in the same court and having summons issued, and thereafter, the exact time being to this petitioner unknown, E. W. Whitcomb, one of the attorneys for the land company, presented to Hon. J. M. Stevens, Judge, at his chambers, a motion, and on September 3, 1913, the judge acting as judge of the district court made an order which was filed in the action, and thereafter on September 8, 1913, the land company filed in the action in the district court an amended complaint; it is further alleged that

at the time of the commencement of the action by the land company on March 17, 1913, the ranch company had no legal existence in the state of Idaho, and had no right to carry on business, and that there was in fact no action pending against the ranch company, and that the order made by the judge on September 3d was void and beyond his power and authority; that the plaintiffs are the parties beneficially interested in the order so made by the judge on September 3d, and that the judge had no authority or jurisdiction or power as judge of said district court to make an order appointing any person trustee to defend an action against the ranch company that was not pending at the hour of 4 o'clock, November 30, 1912; and that the directors and managers in office of the affairs of the ranch company at the time its right to do business in the state of Idaho was forfeited are the only persons capable of being sued with respect to or upon any claim or demand against the ranch company; and that the action commenced on March 17, 1913, by the land company, was not instituted or commenced until after the forfeiture of the right of the ranch company to do business.

To this petition counsel for the defendant filed a motion to quash and dismiss the petition. We will consider this motion in the order which counsel present in their briefs upon the argument, which they designate as follows: 1. Did the lower court exceed its authority in making the order complained of? 2. If so, does *certiorari* lie to correct the error? 3. Are the plaintiffs beneficially interested so as to entitle them to invoke this court's power to issue a writ of review?

As to the question of the court's exceeding its authority, counsel for the plaintiffs call the court's attention to the authority conferred in sec. 11, chap. 6 of the Laws of 1912, and claim that sec. 11 confers no authority upon the court to appoint a receiver or trustee.

The main contention of the petitioners is, that the district court had no authority to appoint, upon the petition filed in this case, any person as trustee to defend an action against the ranch company which was not pending at the hour of 4 o'clock P. M. on November 30, 1912, and that the

only persons capable of being sued since November 30, 1912, with respect to or upon any claim or demand against the said ranch company, are the persons who were directors or managers in office of the affairs of the said ranch company at the time its right to do business in the state was forfeited, at the hour of 4 o'clock P. M., November 30, 1912, under the act of March 17, 1913, and that no action or suit so commenced on March 17, 1913, by the land company, was instituted or commenced in said court until after the forfeiture of the right of said company to do business in the state of Idaho; that it could not and cannot be prosecuted against any person or persons except the persons who were directors and managers in office of the affairs of the said company at the time its right to do business in the state of Idaho was forfeited, to wit, November 30, 1912.

The petitioners in their brief refer to an act, chap. 6, Extraordinary Sess. Laws 1912, p. 10, which follows the general laws of the state passed at the 11th session, and claim that the order of the trial court should be reviewed with reference to his action in appointing a trustee, and that a corporation organized under the statutes of this state and doing business in this state cannot sue a foreign corporation which has not complied with the act of January 30, 1912, above referred to herein, secs. 1, 2 and 10.

It is true from the record in this case that the ranch company was a corporation organized under the laws of the state of Montana, and the record does not show that the ranch company did comply with the laws of the state, but so far as appointing a trustee or receiver for the foreign corporation, the ranch company, there is nothing in the record to show that the court rested his jurisdiction to appoint a receiver wholly upon the act of January 30, 1912, except there was presented to the court the fact that the company had not complied with the act. The trial court no doubt rested upon the constitution and the statutes enacted in carrying out its original jurisdiction in all cases both at law and in equity, and such appellate jurisdiction as may be conferred by law. (Const., art. 5, sec. 20.)

To carry out and give effect to this constitutional provision the legislature has provided, sec. 3830: ''The district court has original jurisdiction: 1. In all cases both at law and in equity; 2. In all special proceedings; 3. In the issuance of writs of *mandamus, certiorari,* prohibition, *habeas corpus* and all writs necessary to the exercise of its powers. . . . . '' Also sec. 2787 of the Rev. Codes, which was not repealed or changed by the act of January 30, 1912. This section provides: ''Unless other persons are appointed by the court, the directors or managers of the affairs of such corporation at the time of its dissolution are trustees of the creditors and stockholders, or members, of the corporation dissolved, and have full power to settle the affairs of the corporation.'' This section does not apply in this case, but only applies to the right to do business in the state.

There is no provision in the act which limits the jurisdiction of the court in appointing trustees and receivers of a foreign corporation, which owns valuable property in the state and is making contracts and carrying on business, where such corporation becomes insolvent and has creditors, and is unable to pay the debts of the corporation, and there is no question but that such corporation can be sued in the courts of the state, and the courts acquire jurisdiction of such foreign corporation by reason of the fact that such corporation has appointed an agent and a principal place of business located in the state; and the district court and the judge thereof has power to make such appointment. (Sec. 4329, Rev. Codes.)

A receiver was appointed September 3, 1913, several months after the action of the land company against the ranch company was filed for the foreclosure of its mortgage securing a promissory note issued by the ranch company for the sum of $66,483.60, securing its mortgage deed, bearing date May 28, 1910, covering certain property located in the state of Idaho.

In the case of *Hall v. Nieukirk,* 12 Ida. 33, 118 Am. St. 188, 85 Pac. 485, this court held that under subds. 5 and 6 of sec. 4329, Rev. Stats., a receiver will be appointed where it

is shown that the corporation is insolvent or in imminent danger of insolvency, and in all cases where receivers have heretofore been appointed by the usages of the courts of equity. The record in this case sufficiently shows that this rule is applicable to this case. In the former case the court cites many authorities applicable to the facts of this case, and in that case the court holds, under our statutes an appointment of a receiver does not necessarily cause a dissolution of the corporation, unless the court so directs. The receiver may be appointed simply to manage the affairs of the corporation during the pendency of the litigation.

High on Receivers, sec. 344b, lays down the rule announced in the above case, and also the following rule:

"Except so far as the control of its affairs is placed in the hands of the receiver, it continues to exist for all purposes, and its officers, except as enjoined by the court appointing the receiver, continue to exercise their functions as if no receiver had been appointed."

The question of the right of a foreign corporation to sue without complying with the statutes has been under consideration a great many times by the different courts of the United States, and the jurisdiction and rule adopted in such constructions of courts have been collected in Thompson on Corporations, 2d ed., vol. 5, secs. 6716 to 6726, inclusive, wherein the rule is stated that in many jurisdictions the failure to comply with the statutory requirements for doing business does not affect the right of a foreign corporation to maintain actions in the local tribunals. (*Webster v. Ore. Short Line Ry. Co.,* 6 Ida. 312, 55 Pac. 661; *Vermont L. & T. Co. v. McGregor,* 5 Ida. 320, 51 Pac. 102; *Valley Lumber Co. v. Nickerson,* 13 Ida. 682, 93 Pac. 24.)

In sec. 6718 (Thompson on Corporations, *supra*), many cases are cited where it is held that a foreign corporation cannot maintain an action within the courts of the state on any contract executed within the state without complying with the required provisions. A foreign corporation is not permitted to sue in the domestic courts until it has placed itself in a position to be sued according to local statutes. This

latter rule, we think, states the correct rule to be applied, with certain exceptions found in sec. 6717. In the present case we think the rule stated in sec. 6718 is the rule to be applied to the facts shown in this case.

On November 30, 1912, the time fixed by the governor under the act approved January 30, 1912, the ranch company, its directors and officers, forfeited all rights as such or on its behalf, and they were disqualified to do business under the laws of this state, and such forfeiture continued from that time until the present, and by reason of that fact the ranch company and its directors on its behalf were prohibited to appear in the courts of this state affecting any transaction or contract, including the contract made between the land company and the ranch company at the time the same was entered into, and the plaintiffs in this case could not acquire an interest in the property in controversy except by an instrument in writing, subscribed by the parties creating, granting, assigning, surrendering or declaring the same, or by the lawful agent thereunto authorized by writing. (Sec. 6007, Rev. Codes.) Neither could the mortgage executed by the ranch company to the land company to secure the balance due on the purchase price of said land be renewed or extended, except by writing, executed with the formalities required in the case of a grant or conveyance of real property. (Sec. 3389, Rev. Codes.)

Under these provisions of the statute it is clear that the plaintiffs, when this application was filed in this court, had no beneficial interest which would justify this court in issuing a writ of review to annul the order made by Judge Stevens at chambers, appointing a trustee or receiver for the ranch company, under the allegations and facts presented to the judge at the time he made the order appointing the receiver in this case. We think, also, that the present action, if brought by parties interested, might be sufficient, because of the necessities and interests of the different parties, and that it would be more speedy and remedial than an appeal.

Other reasons than those we have discussed and decided in this case were presented, but in our judgment they are not material and do not control the questions involved.

We therefore hold in this case that Judge Stevens, judge of the district court of the fifth judicial district, did not err in making the order, and was authorized to make the same. The writ is quashed and the application dismissed. Costs awarded to defendants.

AILSHIE, C. J., Concurring Specially.—I have been somewhat in doubt as to just why this particular proceeding should have been deemed necessary. I am opposed to passing on moot questions, and especially so where a court is overrun with real, live controversies and litigation, as is the case in this court. This observation is prompted by the following view which I gather from the record in this case. The foreign corporation as such was not entitled to defend in the foreclosure action in the district court, for the reason that it had failed to comply with the state statute in paying its license tax or excise under the provisions of chap. 6 of the Laws of the Extraordinary Session of 1912. The directors of the corporation, however, being residents of the state of Montana, and not being in fact aware of the statute and of the inability of the corporation to appear and defend in the action, employed attorneys and made a formal appearance in the case, filed their answer for the corporation and went to trial. When the existence of the statute and fact of their noncompliance therewith were called to the attention of their attorneys, they immediately withdrew from the case. Apparently, as soon as the counsel for plaintiff was able to catch his breath and get his bearings, he applied to the district court for the appointment of a trustee to defend this action and the court made an appointment. Now, the directors of this noncomplying corporation come to this court, *not as officers of the corporation* but as *"trustees of the corporation and stockholders,"* and seek to question the authority of the receiver to defend in the original foreclosure action, and yet it appears that they have never sought to intervene in that action or to make any appearance whatever as trustees. While under the statute they cannot defend as a corporation,

still they are clearly entitled to intervene and defend in the action and urge all the defenses which *trustees as such* could urge in any action, whether commenced directly against them or by them. Their right to appear and defend in this action has never been denied or questioned, and their right to the possession of the property is not involved in this proceeding, and for that very reason I fail to see where there is any real live issue presented to this court for its consideration in the present action. If they should be denied the right to intervene and defend in the foreclosure action, then they would have a real grievance, or if any question arises between them and the receiver as to the right of possession of the property, then there may be a real, live question for the determination of the court. In the meanwhile, I see nothing but moot questions. It is clear to my mind that when these same men who are now acting as trustees of the noncomplying corporation were in court *as the officers of the corporation* and then withdrew and neglected or refused to appear *as individuals* and trustees, they could not complain of the action of the court in appointing someone to represent this noncomplying corporation for the purpose of defending in the foreclosure action.

The complaint filed in this court, praying for a writ of review, alleges the incorporation and corporate existence of the Shenon Ranch Co. under the laws of the state of Montana and its compliance with the constitution and laws of the state of Idaho so as to entitle it to do business in this state and its acquisition of property in this state and its subsequent failure to pay the annual license tax and the successive acts of the Secretary of State and the governor forfeiting its right to do business in this state subsequent to November 30, 1912. It alleges that W. H. Mulkey was duly and regularly appointed the statutory agent of the corporation with his residence at Salmon City, Lemhi county. The complaint then proceeds: "Thereafter, and within twenty days from the service of the said summons upon the said W. H. Mulkey, the plaintiffs herein, as directors of the said Shenon Ranch Co. in the state of Montana, caused an appearance of

the said Shenon Ranch Co. to be entered in the said pretended action, and a demurrer to the said complaint to be filed in the said district court.

"Thereafter and on or about April 23, 1913, the plaintiffs herein, as such directors, caused an answer and cross-complaint to be filed in the said pretended action, a true copy of which said answer and cross-complaint, marked exhibit 2, is hereto attached and made a part of this affidavit and petition for a writ of review. Thereafter and on or about April 24, 1913, the said Shenon Land Co., Ltd., by its attorneys, E. W. Whitcomb and F. J. Cowen, filed in the said pretended action in the said district court an answer to the said cross-complaint of the said Shenon Ranch Co., a true copy of which said answer to said cross-complaint, marked exhibit 3, is hereto attached and made a part hereof.

"On or about the 23d day of April, 1913, the said pretended action, so commenced by the said Shenon Land Co., Ltd., against the said Shenon Ranch Co., came on for trial in the said district court of Lemhi county, Idaho, before the Honorable J. M. Stevens and a jury. The trial of said pretended action continued thereafter from day to day and over Sunday, until the 28th day of April, 1913, on which last-named day, upon the opening of said district court, James H. Rowe filed in the said district court, and presented to the said judge thereof, a suggestion in writing of the termination of the existence in the state of Idaho of the right to do business in the state of Idaho of the said Shenon Ranch Co., a true copy of which said written suggestion, marked exhibit 4, is hereto attached and made a part hereof."

It will be seen from the foregoing extract from the complaint that the directors of this corporation are residents of the state of Montana and that they joined in the employment of counsel and in directing the filing of an answer and prosecution of the defense in this case and that the trial was actually entered upon. It is true that the statute prohibits a corporation defending in an action under such circumstances and attaches a penalty for so doing. It is equally true that the statute (sec. 11, chap. 6 of the Laws of the Extraordinary

Session of the legislature of 1912) makes it the duty of the directors of a noncomplying corporation to act as trustees of the corporation and its stockholders in both the prosecution and defense of all actions then pending or subsequently instituted. The courts must look through and beyond mere technicalities and forms and names and reach, if possible, the justice of the case as the facts disclose it. It would be a clear subversion of the ends of justice to say that these men, organized and doing business under the laws of Montana and subsequently under the laws of Idaho under a corporate name, can respond to the service of process, appear and answer and enter upon the trial of a case in their corporate name and then in the midst of the trial withdraw in their corporate name and capacity and decline to appear in their individual capacity or as trustees which the law designates them, and then complain that the court is proceeding without jurisdiction when it appoints a receiver or trustee *pendente lite* to appear and defend the action. A court of justice ought to turn a deaf ear to such a complaint. If that kind of a practice were to be recognized and adhered to, it would place a premium on foreign corporations that have become indebted failing to pay their license tax and comply with the law and thereby increase the difficulties and expense of a citizen of this state prosecuting an action for the collection of a debt or liability incurred by such foreign corporation. It would thus accomplish what the statute intended to prevent.

The order of the trial court appointing a receiver or trustee herein recites that the directors of this noncomplying corporation are nonresidents of the state and beyond the jurisdiction of the court, and that fact is not denied. The fact that these trustees filed a separate and independent action in the court by no means subjects them to the jurisdiction of the court in this action, unless they see fit to appear in the action, and only a constructive service could be had if the service must be had against them as individuals. It is true the order of the court appointing the receiver, in the closing part thereof, seems to be general in form, and clothes the

receiver with full power and authority to settle the business and affairs of the corporation in general. The only question, however, here involved and the only one which I shall treat is the appointment of this receiver for the purpose of defending this action and the necessary and incidental authority to act during the collection of any judgment that may be obtained therein. I have no doubt of the right of the court to make the appointment under the provisions of sec. 11 of chap. 6 of the Laws of the Extraordinary Session of 1912, as well as the provisions of subds. 5 and 6 of sec. 4329 of the Rev. Codes. This court has previously held in two cases that a trial court possesses such power under the provisions of subds. 5 and 6 of sec. 4329.

In *Gibbs v. Morgan*, 9 Ida. 100, 72 Pac. 733, this court said: "As far as possible courts of equity should adapt their practice to the existing conditions of the business world and apply their jurisdiction to the changed conditions and cases arising thereunder, and should not too strictly adhere to forms and rules established under different circumstances and decline to administer justice and enforce rights for which there is no other remedy."

In *Hall v. Nieukirk*, 12 Ida. 33, 118 Am. St. 188, 85 Pac. 485, the Gibbs-Morgan case was approved, and in the syllabus to the case, approved by the court, it is said: "Under our statute, an appointment of a receiver does not necessarily cause a dissolution of the corporation, unless the court so directs; the receiver may be appointed simply to manage the affairs of the company during the pendency of the litigation."

It was sought throughout the presentation of this case to apply to a noncomplying foreign corporation the same rule applicable to a dead domestic corporation or individual. Such a doctrine is unsound for any purpose except as a theory. It is a palpable fallacy. A domestic corporation is the creature of the laws of this state, and when its term of existence expires, it is dead and cannot have any existence here any longer or anywhere else; so, also, when its right to further do business has been forfeited or has been dissolved

by legal procedure. Not so with a foreign corporation. Its ceasing to comply with the laws of the state and to further obey them simply results in excluding it from this jurisdiction, but it still lives in the jurisdiction of its creation and its officers and stockholders are still interested and continue to direct its affairs. While theoretically dead in this state, the actual facts show that it was very much alive. The directors who sent their attorney to this state to file an answer were acting as directors of the corporation, at least until their attorney reached the state line. Thereafter it may be admitted that he was merely representing these directors as the trustees of the corporation, but it must be apparent at once that any rights they acquire as trustees under the laws of Idaho will inure to the benefit of the *corporation* under the laws of Montana.

Let us see now what provision, if any, the act under consideration (sec. 11 of chap. 6, Laws Extraordinary Session 1912) makes for appointment of a trustee or receiver. The statute says: "In all cases of forfeiture under the provisions of this act, the directors or managers in office of the affairs of any domestic corporation whose charter may be so forfeited, or of any foreign corporation whose right to do business in this state may be so forfeited, or any other person or persons who may be appointed by any court of competent jurisdiction to perform that duty, are deemed to be trustees of the corporation and stockholders or members of the corporation whose power or right to do business is forfeited." The statute has therefore only conditionally appointed the directors of the dissolved or noncomplying corporation as trustees, and it has left it to the discretion and within the power of the court to appoint some competent person or persons to act as trustee or trustees where the directors fail to act or for any lawful reason the court may deem them disqualified or improper persons to so act.

Further pursuing the provisions of the statute, we find that it specially provides that no abatement shall take place in any action pending at the time of the forfeiture, and that the same may be prosecuted to final judgment and execution

may issue thereon without bringing in anybody else or substituting a receiver or trustee for the purpose of defending the action. The statute, however, is silent as to any action instituted after the forfeiture, and of course it could not be foreseen by the law-making body that a case of this kind would arise where the action would be instituted after the forfeiture had in fact been declared and still the forfeiture would be unknown both to the creditor and the corporation, and the corporation would actually appear and enter upon the defense of the action. If, however, we should take this statute as impliedly indicating that an *abatement* would take place in an action instituted after the forfeiture, there would still be no justification for the inference that by the use of the word "abatement" it was intended that the forfeiture would absolutely destroy any right of action a creditor might have and that the abatement of the action would be permanent and result in a dismissal thereof.

The present case was a suit in equity and *in rem* to foreclose a mortgage, and "in equity an abatement means merely a state of suspended animation from which the suit may be revived" (1 Cyc. 21; *Zoellner v. Zoellner,* 46 Mich. 511, 9 N. W. 831); that is, the suit may revive when the reason for the abatement ceases, such, for example, as the appointment of a receiver *pendente lite,* or a guardian *pendente lite,* or a special administrator, or a special representative to defend the action. In the case at bar, the action was abated until a trustee was appointed to represent the stockholders of the noncomplying corporation.

There is another principle of law everywhere recognized, the application of which would lead one to believe that an action commenced against a foreign corporation, even after the forfeiture of its right to do business, might not wholly fail but would only abate until such time as a proper party could be brought in to defend or a trustee might be appointed, and that is the presumption which arises that a person once in existence continues to live until the contrary is shown. In other words, if this foreign corporation had come into the state and complied with the laws thereof so as to

give it the standing of a domestic corporation and entitle it to do business in this state, so long as it continues to do business the presumption would arise that it is alive and complying with the laws of the state. No presumption of its death would arise, and it is doubtful if a party who has a cause of action against such corporation would be chargeable with the duty of investigating to determine before commencing his action whether or not it had terminated its existence by failing to comply with the law. It is unnecessary, however, to determine that question in this case, for the reason that we must pass upon cases in the light of the facts of each particular case, and in the present action the directors of the corporation responded to the service of summons on the statutory agent and appeared and answered and actually entered upon the trial of the case. We hold that in such case the action should not be dismissed but would only abate until such time as the trustees appear or are brought in to defend or a proper trustee is appointed by the court to defend the action.

Upon a full view of this case as the peculiar facts are disclosed, I conclude that the action of the trial judge in appointing a receiver to defend in this action will not be vacated and set aside on writ of review, and that the directors of this Montana corporation have a right to appear in their individual capacities as trustees and defend in this action. It therefore becomes unnecessary to consider the proposition suggested on oral argument that the trustee appointed by the court does not intend to interpose any defense in this case. The writ should be quashed, and it is so ordered.

SULLIVAN, J., Dissenting.—I dissent. The majority of the court in two opinions hold that the Shenon Land Co., a corporation organized under the laws of the state of Idaho, could commence and maintain an action against the Shenon Ranch Co., a corporation organized under the laws of Montana, which had forfeited all of its rights to do business in this state because of its failure to comply with the laws of Idaho in regard to paying its license tax as provided by an

act of the legislature requiring corporations to pay a license tax, passed at the special session of the legislature held in January, 1912, which act was approved January 30, 1912, and is found in said special session acts at p. 10.

The facts are quite fully stated in Mr. Justice Stewart's opinion, which show that under the provisions of said act said Montana corporation had forfeited all rights to do business in this state. Sec. 10 of said act makes it unlawful for any corporation, domestic or foreign, which becomes delinquent in the payment of its license tax, under the provisions of said act, to exercise the powers of such corporation or to transact any business in the state after the 30th day of November next following the delinquency, and if such delinquent corporation transacts any business after the forfeiture of the rights of such corporation, it is made guilty of a misdemeanor and upon conviction may be punished by fine of not less than $100 and not exceeding $1,000, or by imprisonment in the county jail not less than 50 days and not more than 500 days, or by both such fine and imprisonment.

Under the facts appearing from the record, it was made a crime for said Montana corporation to do any business in the state after the hour of 4 o'clock P. M. on November 30, 1912. Said corporation has not been reinstated under the provisions of said act and has no authority whatever to do any business or to defend any suits in this state subsequent to the last-mentioned date. Its corporate rights were all forfeited, and so far as this state was concerned it was a dead corporation. Had it been a domestic corporation, it would have forfeited its charter.

. Thereafter, on March 17, 1913, the Idaho corporation attempted to bring an action in the district court of Lemhi county against the Montana corporation, to foreclose a certain mortgage against said Montana corporation, by filing a complaint in the district court of Lemhi county. Service of summons in said action was made upon the person who had theretofore been designated as the agent of the Montana corporation, but whose agency terminated when the Montana corporation forfeited all its rights to do business in this state.

However, the officers of the said Montana corporation employed attorneys to defend said corporation in said action, and caused an answer and cross-complaint to be filed in said action. Said officers and directors did not appear in said action any further than to employ counsel to defend on behalf of the corporation.

Thereafter, on April 24, 1913, the action came on for trial in the said court and a jury was impaneled and the trial continued from the 23d to the 28th of April, when the attorneys for the Montana corporation discovered said act of the legislature under which all its rights to transact business in this state had been forfeited, and by which act it was made a misdemeanor for said Montana corporation to transact any business whatever in this state, and suggested to the court the discovery of said law and that under it said corporation had no right to defend said action. Thereupon said court discharged the jury and the trial was terminated without any judgment of any kind being entered in said matter.

On the following day, April 29th, the plaintiffs in this proceeding, who are the duly qualified and acting directors of said Montana corporation, brought an action against the Idaho corporation in said court and had summons issued in such action and said directors as plaintiffs sought to have said mortgage canceled and annulled. Thereafter (the exact date not appearing in the record) counsel for the Idaho corporation made application to said court for the appointment of a "trustee" for the Montana corporation, its stockholders and members, with power to settle the affairs of said Montana corporation in the state of Idaho and with full power to maintain and defend any action or proceeding then pending against it, and to take such legal proceedings as might be necessary to fully settle the affairs of said corporation in this state "and to do all acts provided to be done in section 11, chapter 6, of the General Laws of Idaho passed by the Extraordinary Session of the 11th session of the legislature, 1912" (Sess. L. 1912, p. 18), thus recognizing that the plaintiff was proceeding in said application for the appointment of a trustee and not under the general laws for the appoint-

ment of a receiver of an insolvent corporation. The following also appears in said application: "Also that such trustee may be made a party defendant with the defendant corporation in the above-entitled action and that plaintiff may be permitted to file an amended complaint and to have summons issue thereon to said trustee."

On September 3, 1913, more than four months after the discharge of said jury, the court granted said motion and appointed one C. G. Matthewson as trustee of the Montana corporation, its stockholders and members, with full power to settle the affairs of said corporation in the state of Idaho.

The question directly presented is whether the court had jurisdiction to appoint said trustee under the provisions of said act.

The 11th section of said act provides, among other things, as follows:

"In all cases of forfeiture under the provisions of this act, the directors or managers in office of the affairs of any domestic corporation whose charter may be so forfeited, or of any foreign corporation whose right to do business in this state may be so forfeited, or any other person or persons who may be appointed by any court of competent jurisdiction to perform that duty, are deemed to be trustees of the corporation and stockholders or members of the corporation whose power or right to do business is forfeited, and have full power to settle the affairs of the corporation, and to maintain or defend any action or proceeding then pending in behalf of or against any of said corporations, or to take such legal proceedings as may be necessary to fully settle the affairs of said corporation, and such directors or managers, as such trustees, may be sued in any of the courts of this state after such forfeiture by any person having a claim against any of said corporations; *provided, always,* that no action pending against any corporation, at the time of such forfeiture, shall abate thereby, but may be prosecuted to final judgment, and the same may be enforced by execution with the same force and effect, and in like manner as though no forfeiture had occurred."

It will be observed from the provisions of said section that the directors or managers in office of the affairs of any domestic corporation whose charter may be forfeited under said act, or of any foreign corporation whose right to do business in this state may be forfeited, are deemed to be trustees of the corporation or stockholders or members of the corporation, and have full power to settle the affairs of the corporation and to maintain or defend any action or proceeding then pending in behalf of or against any of said corporations, or to "take such legal proceedings as may be necessary to settle the affairs of such corporation." Said section provides that said managers, directors or trustees may be sued in any of the courts of this state after such forfeiture by any person having any claim against any of such corporations. It also specifically provides that no action pending against any corporation at the time of such forfeiture shall abate thereby, and does not provide that any action can be maintained against such corporation which is commenced after the forfeiture of its corporate rights. Under the provisions of said section, a domestic corporation forfeits its charter and all its rights on failure to comply with the provisions of said act, and it is then left to the directors or managers to settle up the affairs of the corporation. If they fail or neglect to do so, the court on proper application may appoint a trustee to wind up the corporation's affairs under the direction of the court. No showing whatever has been made to the effect that the officers and directors of said corporation have failed and refused to proceed to wind up the affairs of said corporation in this state; but the record shows exactly the contrary. It shows that as soon as they ascertained that the Montana corporation could not defend in said action and that it was a crime for it to defend, they brought an action in the name of the directors in which they subjected themselves to the jurisdiction of the trial court and sought to bring to issue the right of the Idaho corporation to foreclose said mortgage. The record shows that such directors subjected themselves to the jurisdiction of the court and sought to take charge of the property and affairs of said corporation and wind up

its affairs for the benefit of its creditors and stockholders, as clearly contemplated by said act.

Under the provisions of said act, the court ought to appoint a trustee to displace the directors in winding up the affairs of such corporation only in case of neglect of duty or abuse of power by the directors, and only when required for the protection of the rights of creditors or stockholders. No neglect of duty or abuse of power whatever has been shown in this case, as the directors, immediately upon discovering that said corporation had forfeited its rights to do business, submitted themselves to the jurisdiction of said court.

This action was brought about four months after the Montana corporation had forfeited its rights to do any business whatever in this state. The summons was served upon the person who had been designated as the statutory agent of the Montana corporation and was its statutory agent until it forfeited its right to do business in this state. After that he was not its statutory agent for any purpose whatever, and there was no authority whatever for service of summons upon him for said corporation. Would it be contended for a moment that a corporation which had no authority whatever to do business in the state could have a statutory agent upon whom process might be served? I think not. Then, no service of summons has been made in this case and the only appearance made was for the corporation, which appearance was unlawful under said act. It is not quite fair to say that the directors appeared in said action. Their only appearance was on behalf of the corporation and not as directors and officers of said corporation. The only thing they did was to file an answer for the corporation. No answer was filed by them as directors and trustees. Then there has been no service of summons in this case, and upon the theory of the majority, the court, or judge, may appoint a trustee upon whom service may be made or who may appear in the case without any service of summons, and bind the corporation by his appearance. It seems to me that the statement of this proposition is sufficient to show its fallacy. The service of

summons has not been made upon the corporation in this case and no one has appeared for it who had any authority whatever to appear.

The chief justice names the person appointed by the court a "receiver" and in his opinion says that said "receiver" was appointed to defend in this action and to represent the stockholders of said corporation. The court, however, in his order calls him a "trustee." The application for the appointment calls him a "trustee" and asks that a "trustee" be appointed and that plaintiff may be permitted to file an amended complaint "and to have summons issued thereon to said trustee." Counsel for plaintiff thus concedes that the service of summons upon the Montana corporation was not sufficient, but had the court appoint a trustee upon whom the summons might be served.

It must be conceded that there was no agent or any other person in this state at the time of the commencement of this suit upon whom summons could be legally served, and the court had no authority to appoint a trustee for that purpose. This is an action to foreclose a mortgage, and the statute provides how service of summons may be made upon a nonresident defendant. Service of summons by publication could have been made under the law of this state, but no such service has been made.

The chief·justice holds that "abate," as used in sec. 11 of·said act, means "suspended animation," from which the suit may be revived, but Bouvier in his Law Dictionary states that the word "abate" as applied to an action is to cease; terminate, or come to an end prematurely, and says that the suit may be revived when the reason for the abatement ceases. (Sec. 848, Equity Pl. & Pr. by Fletcher, as to procedure to revive an action.) The word "abate" as used in said section 11 of said act refers to actions pending at the time of the forfeiture and to none other. If this action had been pending at the time of the forfeiture, it would have come under that provision of said statute which includes the word "abate" and is as follows: "Provided, that no action pending against any corporation at the time of the forfeiture shall abate

thereby but may be prosecuted to final judgment.'' The action to foreclose said mortgage was brought four months after the forfeiture and had no existence at the time of the forfeiture. It had no animation to suspend. After a forfeiture, suit may be brought by any person having a cause against the corporation against the directors as trustees, and if they fail or refuse to appear and defend, the court may appoint a trustee to do so. Said action was brought against the Montana corporation and the complaint in no manner makes the directors defendants therein.

The chief justice states in his opinion that the directors of said Montana corporation caused an appearance of that corporation to be entered in said action. I would ask: How could the directors cause a legal appearance to be entered for the Montana corporation when under the law that corporation was prohibited from appearing or defending in any action or doing any business whatever in this state, and especially when it was made a crime for them to appear and defend in said case? Said directors could not appear for the Montana corporation under the provisions of said act.

The chief justice states that the directors responded to the service of process, appeared and answered and entered upon the trial of the case, and then in the midst of the trial, withdrew. The record, as I understand it, shows that the only appearance that was made was for and on behalf of the Montana corporation. The directors as directors, or trustees for creditors and stockholders, made no appearance whatever.

The chief justice says in his opinion that the order of the trial court appointing the trustee recites that the directors of this noncomplying corporation are nonresidents of the state and beyond the jurisdiction of the court "and that fact is not denied.'' The record shows that that statement in the order of the district court is not true; the judge was there mistaken. The record shows that the directors had all appeared and submitted themselves to the jurisdiction of the court by bringing an action in said court to test the validity of the mortgage sought to be foreclosed in the original case

and that action was pending in that court from the 29th
day of April, 1913, and was pending at the time said order
was made and a resident attorney of this state was one of the
attorneys who appeared for said directors.

However, if the commencement of said action by the direc-
tors involving the question of the validity of the mortgage
that was sought to be foreclosed did not give the court juris-
diction of the directors in the foreclosure suit, if the court
holds that that action was still pending and that service of
summons had been properly made on the noncomplying cor-
poration and that attorneys had appeared for it, the law
would require the service of all motions and papers in that
action to be made upon the attorneys appearing therein. It
is contended that said action is still pending, and if so, the
attorneys who appeared therein for the defendant ought to
have been served with a notice of said motion to appoint
the trustee. Counsel for the plaintiffs ought not to be per-
mitted to "play fast and loose" in this matter, and contend
that the action is pending and that service of summons and
appearance has been made by counsel for the defendant cor-
poration, and then refuse or decline to serve all papers in
such action upon the attorneys.

The chief justice would indicate by his opinion that he
was a little doubtful whether the trial court or judge had
power to appoint a "receiver" and clothe him with full power
and authority to settle the business and affairs of the Mon-
tana corporation in general, but holds that the court had
jurisdiction to appoint him to defend in said action, and in
support of that proposition refers to two cases decided by
this court under the provisions of sec. 4329. It is sufficient
to say that the application for the appointment of said re-
ceiver was not made under the provisions of sec. 4329, but
was made under the provisions of the act of 1912, and that
law was not intended to be supplemented by the provisions
of sec. 4329 in regard to the appointment of receivers for
corporations.

The act of 1912 was passed for the purpose of winding up
the affairs of a corporation in this state that had forfeited

its right to do business therein. Under the provisions of said act, domestic and foreign corporations are placed on the same footing; neither has any right to do business in the state after the forfeiture. The chief justice says that a domestic corporation is "dead" after the forfeiture, and I undertake to say that a foreign corporation is just as dead in this state as a domestic corporation, after the forfeiture, so far as its doing business in this state is concerned.

The chief justice states in his opinion that it is left in the discretion and within the power of the court to appoint some competent person or persons to act as trustee or trustees where the directors fail to act or for any lawful reason the court may deem them improper persons so to act. The facts of this case show that the directors have not failed to act and it is not shown that they were disqualified from acting.

As before stated, the very next day after it was ascertained that the rights of the Montana corporation had been forfeited, the directors submitted themselves to the jurisdiction of the court and employed a resident attorney to represent them. The mere fact that the directors of a noncomplying corporation are residents of another state does not deprive them of the right to represent the stockholders and creditors and authorize the court to appoint a trustee in their stead. The record clearly shows that the directors were desirous of representing the creditors and stockholders and no fact or facts appear in the record that would indicate that they were in any manner disqualified from so doing, or that would justify the court in appointing a trustee to take their place.

In *Havemeyer v. Superior Court,* 84 Cal. 327, 18 Am. St. 192, 24 Pac. 121, 10 L. R. A. 627, the court held that upon the involuntary, as well as voluntary, dissolution of a corporation, the administration and distribution of its assets is left, as a rule, to the directors in office at the date of dissolution, even though the dissolution be upon judgment of forfeiture, and that the appointment of a receiver is an exception to be made only in cases of neglect of duty or abuse of power by the directors, when required for the protection of the rights of a creditor or stockholder. That is a very

instructive case and construes sec. 400 of the Civil Code of California, which is identical with sec. 2787, Rev. Codes of Idaho, and is as follows: "Unless other persons are appointed by the court, the directors or managers of the affairs of such corporation at the time of its dissolution are trustees of the creditors and stockholders or members of the corporation dissolved, and have power to settle the affairs of the corporation." Sec. 11 of the Idaho act contains, among other things, substantially the same provisions as does said sec. 400 of the Cal. Code. In commenting on that section, the supreme court in the Havemeyer case said: "By its own unaided force, without the intervention or any necessity for the intervention of a court, it makes the directors managers of the affairs of the corporation and trustees for the creditors and stockholders, with full power of settlement." The court held that said directors are amenable to the jurisdiction of a court of equity and may be called to account if they neglect their duty or abuse their power; but it holds that until they are so called to an account in an independent action or proceeding by a party in interest, no court has any excuse for interference. Commenting on the decision of the superior court in that case, the court said: "Because a corporation has violated its duty to the public, it does not follow that its members cannot be trusted to look out for their own interests," and suggests that creditors will be more quickly and certainly paid without a receiver than with one, as the expenses of a receivership may greatly reduce the assets of such corporation.

When a corporation is thus dissolved, its property vests in its stockholders, under our law, subject only to the claims of the creditors, and after the dissolution of such corporation, the property of the corporation is held upon the same tenure, subject to the same conditions, as similar property owned by natural persons, and whatever others may do with their property they may do after paying the debts of the dissolved corporation.

The Montana corporation has not forfeited its property rights by its failure to pay said license tax and comply with

said law; it has simply forfeited its rights to do business in the state, but said act preserved to the directors the right to become the trustees of the creditors and stockholders of such corporation. Had the Idaho corporation, after the Montana corporation had forfeited its rights to do business in this state, brought its action against the directors of said corporation for the foreclosure of said mortgage, the action could have been maintained, and although the directors were residents of Montana, plaintiff could have procured service on them by publication of summons. There would have been no difficulty whatever in that regard. There was no Montana corporation in existence in this state at the time said action was brought, and no action can be maintained against a nonexistent corporation any more than one can be maintained against a dead man. That corporation was dead so far as this state was concerned and all the rights of the Idaho corporation could have been fully protected by complying with the provisions of said act of our legislature in bringing its action, as said sec. 11 of said act provides that actions may be brought against such directors and that they may maintain actions in the settlement of the property rights of such nonexistent corporations.

In *Crossman v. Vivienda Water Co.*, 150 Cal. 575, 89 Pac. 335, it was held as follows:

"It is settled beyond question that, except as otherwise provided by statute, the effect of the dissolution of a corporation is to terminate its existence as a legal entity, and render it incapable of suing or being sued as a corporate body or in its corporate name. It is dead, and can no more be proceeded against as an existing corporation than could a natural person after his death. . . . . As to this, all the text-writers agree, and their statement is supported by an overwhelming weight of authority."

Many authorities hold that all actions abate upon the dissolution of a corporation, voluntary or involuntary. However, said act of our legislature provides that no action pending against any corporation at the time of such forfeiture shall abate thereby but may be prosecuted to final judgment.

This provision clearly indicates that the legislature did not intend that any action could be brought and maintained against a corporation after its rights had been forfeited under the provisions of said act. The forfeiture of the rights of the Montana corporation in this state put an end to its existence, so far as this state is concerned, for all purposes whatsoever as a corporate entity and destroyed all of its powers as such. In other words, the forfeiture of all its rights under the laws of this state meant its legal death and there remained thereafter nothing but the settlement of its estate and said act of the legislature provides how that must be done.

It is stated in 5 Thompson on Corporations, 2d edition, sec. 6550, as follows: "And while, as will further appear, statutes may provide that the directors and trustees at the time of dissolution shall be trustees of the creditors and stockholders, with power to settle the affairs of the corporation, yet even such a statute does not have the effect of continuing the corporate existence so as to enable it to prosecute or defend an action in its corporate name." And in sec. 6555, the author quotes from *Nelson v. Hubbard,* 96 Ala. 238, 11 So. 428, 17 L. R. A. 375, as follows: "The dissolution of a corporation implies its utter extinction and obliteration as a body capable of suing or being sued."

It may be contended that the Montana corporation is not dissolved. As I view it, there is nothing left of that corporation as a corporation; it is dissolved and dead so far as this state is concerned, and had it been a domestic corporation, under the provisions of said act of our legislature, it would have forfeited its charter and then would have been dead indeed, but no more dead than the Montana corporation now is, so far as this state is concerned.

It was held in *Combes v. Keyes,* 89 Wis. 297, 46 Am. St. 839, 62 N. W. 89, 27 L. R. A. 369, that after the dissolution of a corporation, the power to proceed judicially against it is wholly divested except as specially authorized by statute. The act of our legislature referred to especially reserves the right to creditors and others to sue the directors and managers of the dead corporation in order to enforce any claims

or rights that they may have against it after its rights are forfeited.

In Mr. Justice Stewart's opinion, he quotes from sec. 4329, Rev. Codes, as supporting the doctrine that the court had jurisdiction to appoint a receiver in the case at bar. That section, as I view it, has nothing to do with the appointment of a trustee under the provisions of said act of 1912. There was no showing made by the Idaho corporation for the appointment of a trustee such as is required under the provisions of said sec. 4329 for the appointment of a receiver. The law of 1912 was enacted for cases where corporations had forfeited their right to do business in the state by reason of their having failed to pay their license fee and not for the appointment of a receiver on the grounds provided in said sec. 4329. The provisions of that section have no application whatever to this case and none of the grounds authorizing the appointment of a receiver under sec. 4329 were attempted to be shown in the application to appoint said trustee.

I therefore conclude (1), that under the provisions of said section the action of the Idaho corporation could not be maintained against the Montana corporation, it having been commenced subsequent to the forfeiture of the Montana corporation of its right to do business in this state; (2), that the trial court had no jurisdiction whatever to appoint a trustee to defend the Montana corporation in said action, as said action could not be maintained under the law.

No creditor or stockholder of said corporation can lose any rights whatever by following the provisions of said act of 1912 in winding up the affairs of said corporation in this state. A right of action of any creditor would in no manner be destroyed or jeopardized by following its plain provisions.

A peremptory writ of prohibition ought to issue.