398 P.2d 63

**PACIFIC NORTHWEST BELL TELEPHONE COMPANY, a corporation, Plaintiff-Respondent and Counter-Defendant,**

v.

**R. B. RIVERS and Lois Rivers, husband and wife, Defendants-Respondents and Cross-Defendants,**

**Floyd W. Harvey and Doris P. Harvey, husband and wife, and Hells Canyon Excursions, Inc., a corporation, Defendants-Appellants and Counter-Claimants.**

No. 9486.

Supreme Court of Idaho.

Dec. 17, 1964.

Rehearings Denied Jan. 18, 1965.

J. H. Felton, Lewiston, for appellants.

Paul C. Keeton, Lewiston, for respondents Rivers.

Ware, Stellmon & O'Connell, Lewiston, for respondent Pac. Northwest Bell Tel. Co.

TAYLOR, Justice.

Plaintiff (respondent) brought this action under the Idaho Declaratory Judgment Act to have determined as between the appellants Harvey and respondents Rivers which were entitled to the use of the name "Hells Canyon Excursions, Inc." in connection with their telephone listings.

August 6, 1956, Hells Canyon Excursions, Inc., was incorporated by George Wilkins and Jack Shaughnessy, and the corporation thereafter engaged in the business of conducting boat excursions on Snake river above Lewiston. In 1960 the corporation ceased active operation on the river. At this time defendant Rivers, who had been operating a boat excursion business under the name of Rivers Navigation Company, commenced using the name "Hell's Canyon Excursions." He also obtained from George Wilkins a sign reading, "Hell's Canyon Excursions" and docked his boat under that sign. Defendant Rivers also continued to use the name Rivers Navigation Company.

In November, 1961, defendant Harvey commenced making trips on the river, using the name "Hell's Canyon Excursions." In 1961 defendant Harvey also talked to George Wilkins and proposed to take over the Hells Canyon Excursions, Inc. corporation, and in the meantime to use the corporate name. Negotiations between Harvey and Wilkins thereafter continued. November 30, 1962, the charter of Hells Canyon Excursions, Inc., was forfeited, pursuant to I.C. § 30–607, for failure to pay the annual license tax for that year. Early in May of 1963 defendant Harvey made application to the secretary of state for reinstatement of the charter of Hells Canyon Excursions, Inc. Reinstatement was denied at that time because the license taxes and penalties remitted with the application were not in the correct amounts, and also on the ground that the corporate name had been reserved on May 7, 1963, under the provisions of I.C. § 30–107(3), by an attorney acting for Rivers.

May 15, 1963, Rivers applied to the plaintiff for a listing of "Hell's Canyon Excursions" in its telephone directory, with Rivers' address and number, and in support of this application exhibited a receipt from the secretary of state for $1.00 for the reservation of the corporate name. Plaintiff thereupon informed Harvey of Rivers' application and was advised by Harvey that the latter would contest Rivers' action. However, on May 24, 1963, Harvey informed the plaintiff that it then appeared to him he would be unable to use the name and requested that his number be listed under the name of "Hell's Canyon Tours."

June 24, 1963, plaintiff informed Harvey that the deadline for new telephone listings was approaching, but that he might still have the old listing of Hell's Canyon Excursions if he could produce legal proof, such as Rivers had presented. Having received no immediate response from Harvey, plaintiff published its July, 1963, directory listing "Hell's Canyon Excursions" with the address and phone number of Rivers.

Pursuant to his request the secretary of state was advised by the attorney general on June 27, 1963, that the forfeited charter of Hells Canyon Excursions, Inc. could be reinstated by that corporation despite the fact that a purported reservation of the corporate name had been made on behalf of Rivers. Accordingly, June 28, 1963, the secretary of state issued his receipt to Hells Canyon Excursions, Inc. for delinquent license taxes and penalties and certified the reinstatement of the corporation. Subsequent to June, 1963, the Harveys purchased the outstanding capital stock of Hells Canyon Excursions, Inc.

July 16, 1963, plaintiff commenced this action seeking a declaratory judgment determining the conflicting claims of Harvey and Rivers to the right to the use of the name "Hell's Canyon Excursions." Each of the defendants, the Harveys and the Rivers, by answer, claimed the right to the exclusive use of the name "Hell's Canyon Excursions" and Harveys by counterclaim sought judgment declaring it to be the exclusive right of the reinstated corporation to use the name in the corporate business, advertising and telephone listing, and also claimed damages against both plaintiff and the defendants Rivers.

After trial of the issues, the court concluded that after forfeiture of the charter of Hells Canyon Excursions, Inc., pursuant to I.C. § 30–608, its name was subject to appropriation by Rivers pursuant to I.C. § 30–107(3), and that the attempted reinstatement of the old corporation under its old name was void and that Rivers was entitled to the telephone listing of the name Hell's Canyon Excursions. Judgment was entered enjoining Harveys from using the name Hell's Canyon Excursions and denying their counterclaim for damages. From the judgment Harveys brought this appeal.

Idaho Code § 30–107 sets out the requirements and limitations governing the choice of a corporate name by incorporators incorporating or about to incorporate a new corporation. Its provisions applicable here are:

"2. The corporate name shall not be the same as, nor deceptively similar to the name of any other domestic corporation or of any foreign corporation authorized to do business in this state unless,

"a. Such other domestic or foreign corporation is about to change its name,

or to cease to do business, or is being wound up, or such foreign corporation is about to withdraw from doing business in this state; and,

"b. The written consent of such other domestic or foreign corporation to the adoption of its name or a deceptively similar name has been given and is filed with the articles of incorporation.

"3. The corporate name shall not be the same as, nor deceptively similar to the trade name of any person or unincorporated association doing business under such trade name in this state or elsewhere, if such person or unincorporated association has within the last preceding twelve months signified an intention to incorporate in this state under such name by filing notice of such intention with the secretary of state, unless the written consent to the adoption of such name or deceptively similar name has been given by such person or unincorporated association, and is filed with the articles of incorporation."

It is apparent that subdivision 2, contains the limitations upon the choice of a name the same as, or deceptively similar to, the name of any other existing domestic corporation, and that subsection 3, contains the limitations upon the choice of a name the same as, or deceptively similar to, the trade

name of any person or unincorporated association. In filing notice of intention to incorporate under the name of Hell's Canyon Excursions, pursuant to subsection 3, Rivers, it must be assumed, was claiming to be a "person or unincorporated association doing business under such trade name," and that consent of the old corporation was not necessary to the adoption of its name, because it was not such a "person or unincorporated association doing business under such trade name." However, this case is governed by the provisions of subsection 2. In such case the old corporation must have ceased to do business, or was about to do so, *and* its written consent to the adoption of its name must have been given and filed with the articles of incorporation of the new corporation. It is true that at the time the reservation was made under subsection 3, the old corporation was not "authorized to do business in this state." However, that phrase as used in subsection 2, has reference to foreign corporations, not to domestic corporations, either active or suspended. To construe section 30–107 as Rivers contends it should be construed would render the restorative provisions of I.C. § 30–608 ineffectual. Pertinent provisions of the latter section are:

"Any corporation which failed to pay the license tax and penalty required by this chapter may pay all the said license taxes and penalties prescribed by sec-

tion 30–603, and the license taxes and penalties that would have accrued, if such corporation had not forfeited its charter or right to do business, and any such corporation making such payment shall be relieved from the forfeiture prescribed by this chapter, * * provided, the rehabilitation of a corporation under the provisions of this chapter shall be without prejudice to any action, defense or right which accrued by reason of the original forfeiture: provided, that in case the name of any corporation which has suffered the forfeiture prescribed by this chapter has been adopted by any other corporation since the date of said forfeiture, or a name which so closely resembles the name of such corporation as will tend to deceive, then said corporation, having suffered said forfeiture, shall be relieved therefrom, pursuant to the terms of this section of this chapter, only upon the adoption by said corporation seeking reinstatement of a new name * * *."

Here the corporate name had not "been adopted by any other corporation." At most, a "person" had "signified an intention to incorporate in this state under such name."

Our law fixes no time limit within which application for reinstatement of a forfeited charter must be made.

The effect of forfeiture was interpreted by this court in Ferguson Fruit & Land Co. v. Gooding, 44 Idaho 76, 90, 258 P. 557 (1927):

"Under our view of the statute, a corporation does not, by becoming delinquent, die, as does a natural person or a corporation whose term of existence was terminated, but is rather in a state of suspended animation, from which condition it can be relieved merely by the payment of the delinquent fees and penalties. 'Certainly, if a corporation had been dissolved, it could not be resurrected and reinstated as an entity, in such a free and easy manner.' Hazard v. Park (C.C.A.) 294 F. 40 [42], 43.

"The language of Chief Justice Ailshie, in his special concurring opinion in the case of Rowe v. Stevens, 25 Idaho, 237, at page 254, 137 P. 159, 165, to the effect that a domestic corporation is dead when its right to further do business has been forfeited, should not be considered as applying to the so-called forfeiture for nonpayment of license fee."

This view was approved by Caxton Printers, Ltd., v. Ulen, 59 Idaho 688, 86 P.2d 468 (1939).

"Provision is generally made for reinstatement of corporations which through default in making the reports

or paying the license fees required by law have had their right to transact business suspended or been stricken from the records. Consequently, so long as there is a statutory right to be reinstated, the proclamation of forfeiture for non-payment of taxes does no more than forfeit the corporate right to do business, but does not extinguish the corporation as a legal entity." 16A Fletcher, Cyclopedia Corporations § 7998, p. 67.

Also see Watts v. Liberty Royalties Corp. (10th Cir.1939) 106 F.2d 941; Buhler v. Maddison, 105 Utah 39, 140 P.2d 933 (1943); State v. Sunset Ditch Co., 48 N.M. 17, 145 P.2d 219 (1944); Wax v. Riverview Cemetery Co. (Del.) 2 Terry 424, 24 A.2d 431 (1942); J. B. Wolfe, Inc. v. Salkind, 3 N.J. 312, 70 A.2d 72, 13 A.L.R.2d 1214 (1949).

█ It is clear that the legislature in adopting I.C. § 30–107 recognized not only the need for protection from duplication of corporate names, but also the fact that a name has value even to a company going out of business; hence the provision for written consent. The defendant Rivers did not have written permission from the existing corporation authorizing the adoption of its name, and he gained no right to the name by his attempted reservation of it.

█ Defendant Harvey also assigns as error the trial court's failure to award damages suffered by him as a result of defendant Rivers' use of the corporate name. There was no evidence to show that defendant Harvey suffered damages by reason of the loss of the listing in the Lewiston-Clarkston telephone directory. Approximately ninety percent of his business came from outside the Lewiston area. He had "Hell's Canyon Excursions" listings in the Seattle, Portland and Spokane directories. He testified as to advertising and other expenditures only. In Williams v. Bone, 74 Idaho 185, 259 P.2d 810 (1953) this court held that evidence of gross receipts of a business was not sufficient to support an award of damages for loss of profits. It follows that damages cannot be predicated upon proof of expenditures only. The measure of damages to a business is the loss of profits arising from a wrongful act. Walker Co. v. Pocatello Monument Co., 71 Idaho 294, 230 P.2d 701 (1951) involved unfair competition as the result of the defendant's use of a name deceptively similar to that of the plaintiff. This court sustained the lower court's finding that an injunction against the using of the name would lie but that no damages would be allowed since the use of the name was not the cause of the plaintiff's loss of business. The trial court did not err in failing to award damages to defendants Harvey.

The judgment of the trial court is reversed and the cause is remanded with in-

structions to enter a judgment establishing the right of the Harveys, as owners of the reinstated corporation, to the use of the corporate name "Hells Canyon Excursions, Inc." and enjoining the use thereof by defendants Rivers.

Defendants-appellants Harvey and plaintiff-respondent Pacific Northwest Bell Telephone Company are awarded their respective costs against defendants-respondents Rivers.

KNUDSON, C. J., and McFADDEN and SMITH, JJ., concur.

McQUADE, J., dissents.

### ON DENIAL OF PETITIONS FOR REHEARING

TAYLOR, Justice.

Both appellants Harvey and respondents Rivers have petitioned for a rehearing.

■ Harveys again assert error in failure to award damages. A party may obtain an injunction to prevent unfair competition or wrongful use of a trade name, without waiting for the accrual of actual damages, or the cumulation of evidence thereof. Cazier v. Economy Cash Stores, 71 Idaho 178, 228 P.2d 436 (1951). But, if in addition to injunctive relief, he seeks actual damages, he must be able to establish such damages by competent evidence as in other cases.

■ To adopt the construction of I.C. §§ 30–107(3) and 30–608 urged by Rivers, would nullify the provisions of § 30–608, which gives the right to reinstate, and defines the effect thereof. The legislative grant of the right to reinstate implies a further grant of an opportunity, and a reasonable time, to do so. Having in mind the fact that the legislature has granted unincorporated persons or associations the right to reserve a name for a period of twelve months, on the payment of a fee of $1.00; and having in mind also the fact that a corporation, which has suffered a forfeiture of its charter, may have a greater stake in the preservation of its name, than any interloper ordinarily could have; we hold that the period here involved (less than six months) was not an unreasonable time to be allowed the original corporation to apply for reinstatement of its charter, in the absence of its written consent to the reservation or adoption of its name by another.

Petitions denied.

McFADDEN, SMITH and KNUDSON, JJ., concur.

McQUADE, C. J. dissents.